860 So.2d 881 (2002)
CITY OF DOTHAN PERSONNEL BOARD
v.
Stanley E. DEVANE.
2010809.
Court of Civil Appeals of Alabama.
December 20, 2002.
Rehearing Denied January 31, 2003.
*882 D. Kevan Kelly, asst. city atty., Dothan, for appellant.
Kevin Walding of Hardwick, Hause & Segrest, Dothan, for appellee.
THOMPSON, Judge.
The City of Dothan ("the City") terminated the employment of Stanley E. DeVane, a police officer employed as a member of the City's classified-service system. The Civil Service Act of Dothan, Act. No. 92-442, Ala. Acts 1992 (hereinafter "the Civil Service Act"), governs the procedures for the termination of employees within the City's classified-service system. Pursuant to the provisions of the Civil Service Act, DeVane appealed the City's termination of his employment to the City of Dothan Personnel Board ("the Board"). The Board conducted a hearing at which it received evidence, and it later entered an order affirming the City's decision to terminate DeVane's employment. DeVane then appealed the Board's decision to the trial court. See § 33 of the Civil Service Act. DeVane named the City and the Board as defendants in his appeal to the trial court from the Board's decision.
During the course of those proceedings in the trial court, the Board filed in the Supreme Court of Alabama a petition for a writ of mandamus requiring the recusal of the trial court judge. The Supreme Court of Alabama denied that petition. Ex parte City of Dothan Pers. Bd., 831 So.2d 1 (Ala.2002).
*883 The trial court reviewed the evidence presented to the Board. The trial court reversed the Board's decision and ordered that DeVane be reinstated as a police officer with the City. The City did not challenge the trial court's judgment; however, the Board filed a notice of appeal. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
DeVane contends that the Board is not a party to the dispute that forms the basis of this appeal and that, therefore, the Board does not have standing to appeal the trial court's judgment reversing its decision. See Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996) ("To say that a [party] has standing is to say that that [party] is a proper party to bring the action."). DeVane and the Board have argued this issue in their briefs submitted to this court, and, in response to a request by this court, each submitted additional arguments in letter briefs. The issue of standing is jurisdictional. Kid's Care, Inc. v. Alabama Dep't of Human Res., 843 So.2d 164 (Ala.2002); McCurdy v. L.C. Props., L.L.C., 781 So.2d 991 (Ala.2000); State v. Property at 2018 Rainbow Drive, 740 So.2d 1025 (Ala.1999). Therefore, because the issue has been squarely presented to this court and argued before it, we address the issue whether the Board has standing to bring the appeal in this matter.
Initially, we note that the Board asserts that it is an administrative agency governed by the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-1 et seq., Ala.Code 1975. The Board is correct that the AAPA allows any person aggrieved by an adverse decision to appeal under that Act, see § 41-22-20, Ala.Code 1975. However, the AAPA governs state agencies  not local entities such as the Board. See §§ 41-22-2 and 41-22-3(1), Ala.Code 1975. See also Ex parte Boyette, 728 So.2d 644 (Ala.1998) (holding that Boyette's appeal from a county personnel board decision was governed by a special enabling act and not by the AAPA). Thus, the AAPA does not govern this case; therefore, it does not afford the Board standing to appeal in this matter.
The Board maintains that it has standing to appeal in this case for several reasons. The Board first contends that DeVane failed to raise the issue of standing when the Board petitioned the supreme court for a writ of mandamus during the course of the proceedings before the trial court. See Ex parte City of Dothan Pers. Board, supra (holding that the Board was not entitled to a writ of mandamus requiring the trial judge to recuse). The Board implies, without explicitly arguing, that DeVane is now precluded, on res judicata grounds, from raising the issue of its standing. An issue or action is barred by the doctrine of res judicata when a court of competent jurisdiction has rendered a judgment on the merits in an earlier action that involved substantially identical parties and that presented the same cause of action. Parmater v. Amcord, Inc., 699 So.2d 1238, 1240 (Ala.1997). The issue of standing was not mentioned or addressed in Ex parte City of Dothan Personnel Board, supra. Therefore, we conclude that the doctrine of res judicata does not apply to foreclose this court's consideration of the merits of that issue. Further, the denial of a petition for mandamus does not have a res judicata effect as to other issues. Jack Ingram Motors, Inc. v. Ward, 768 So.2d 362 (Ala.1999) (citing Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167 n. 4 (Ala. 1999)).
The Board also contends that it has standing to bring this appeal because the *884 appellate courts of this state have "consistently allowed cases to proceed on appeal in the name of the Board." The Board cites a number of cases in support of this contention. See Ex parte City of Dothan Pers. Bd., 791 So.2d 353 (Ala.2000); Tucker v. Personnel Bd. of Dothan, 644 So.2d 8 (Ala.Civ.App.1994); City of Dothan Pers. Bd. v. Herring, 612 So.2d 1231 (Ala.Civ. App.1992); Williams v. City of Dothan Pers. Bd., 579 So.2d 1350 (Ala.Civ.App. 1990). Although the Board is correct that Alabama appellate courts have considered appeals brought or defended in the name of the Board alone, it does not appear in any of those earlier cases that the Board's standing was challenged or that the courts considered the issue of standing ex mero motu. Therefore, the cases the Board relies upon are not determinative of the Board's standing in this case.
The Board, citing § 11-44E-45, Ala.Code 1975, argues that the Legislature, by enacting that provision, clearly intended to prevent the City from taking part in personnel matters involving members of the classified service. However, § 11-44E-45 governs the manner in which a city commission for a Class 5 municipality[1] may deal with employees in the city's administrative system.
Assuming that the City is a Class 5 municipality governed a city commission, § 11-44E-45 specifically prohibits the city commission or its members from directing or requesting that a person be appointed to or removed from service in the city's administrative system, and it prohibits the commission from taking part in the appointment or removal of officers or employees in the administrative service of the city; the section provides that the commission may "deal" with matters concerning the City's administrative service through the city manager. § 11-44E-45, Ala.Code 1975. We do not interpret § 11-44E-45 as divesting the City of its status as a party to an action appealing the City's decision to terminate the employment of an employee in its classified-service system.
The Board also maintains that it is a "party" entitled to appeal under the Civil Service Act. The relevant portion of the Civil Service Act provides:
"Section 33. COURT PROCEEDINGS. Orders of the personnel board may be enforced by mandamus, injunction, quo warranto, or other appropriate proceedings, in any court of competent jurisdiction. Any person or city official directly interested may, within five days, appeal to the Circuit Court of Houston County from any order of said board by filing notice thereof with the board, whereupon said board shall certify to a transcript of the proceedings before it and file the same in said court. The findings of fact by said board, duly set forth in the transcript, if supported by substantial evidence adduced before said board, after notice to the interested party or parties and after affording such parties an opportunity to be heard, shall be conclusive on any appeal. The issues on such appeal shall be made up under the directions of the court and within 30 days after such transcript is filed in court; and the trial thereof shall proceed on the evidence contained in such transcript, if it appears that the evidence was taken after such notice and opportunity to be heard. If upon such appeal, the court finds that the ruling, order, or action appealed from is unlawful or unreasonable, *885 within the meaning of this act, it shall have power to vacate or modify the same."
(Emphasis added.) In making its argument on this issue, the Board does not assert that it is a party to the appeal to the Board. Rather, the Board contends that when one of the parties that had appeared before it appeals its decision to the circuit court, the Board becomes a party to that action in the circuit court. However, in discussing the standard by which the circuit court reviews the Board's decision, the Civil Service Act provides for "notice to the interested party or parties." We believe that provision refers to the parties that appeared before the Board, and we conclude that the provision does not expressly provide that the Board is a party to an appeal of its own decision to the circuit court.
The Board next argues that, assuming that it is not a "party" under the Civil Service Act, it has standing to appeal the trial court's judgment because the Civil Service Act authorizes such an appeal for any "person or city official." The Board contends that in providing a right of appeal to a "person or city official," the Civil Service Act includes the Board as a "person" entitled to appeal. In making this argument, the Board ignores the fact that the provision allowing an appeal by a "person or city official" provides for an appeal from the Board's own decision to the trial court. Also, the term "person" is not defined in the Civil Service Act. However, it seems apparent that there would be no need to include the Board as a "person" that would find it necessary to appeal its own decision to the circuit court.
Further, the right of appeal to the circuit court is given to a "person or city official directly interested "in the dispute. The Civil Service Act contains no provision authorizing an appeal from the circuit court's judgment. The Board assumes that the "any person" provision entitles it to appeal the circuit court's judgment to an appellate court. In so assuming, the Board maintains that it is "directly interested" in the outcome of the dispute over whether DeVane was properly terminated and that the City may not assert any rights in this matter.
In essence, the arguments in the Board's brief on appeal that it is "directly interested" in the outcome of this matter are assertions that the Board, rather than the City, is the proper party or real party in interest in the appeal to this court from the circuit court's judgment. See Rule 17(a), Ala. R. Civ. P. (governing real parties in interest); Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d at 253 ("To be a proper party, the person [or entity] must have a real, tangible legal interest in the subject matter of the lawsuit."); Eagerton v. Williams, 433 So.2d 436, 447 (Ala.1983) (a party must have "an interest in the right to be protected" in order to be a proper party); Bagley v. City of Mobile, 352 So.2d 1115, 1118 (Ala.1977) (in order to be proper parties to an action, the plaintiffs "must have, either individually or in a representative capacity, an interest in the right to be protected"). In making those arguments, however, the Board confuses the concepts of real party in interest with the concept of standing.
Our supreme court has discussed the issue of proper parties or real parties in interest under Rule 17(a), Ala. R. Civ. P., and has differentiated that concept from the issue of whether a party has standing in an action:
"There are fundamental differences between the principles of `real party in interest' and `standing.' `"[T]he real party in interest principle is a means to identify the person who possesses the *886 right sought to be enforced. Therefore, the term directs attention to whether [the] plaintiff has a significant interest in the particular action he has instituted."' Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala. 1988) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1542 (1971)).
"Standing, on the other hand, turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.' Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting) (emphasis [on "legally protected right"] added [in State v. Property at 2018 Rainbow Drive]). See also NAACP v. Town of East Haven, 892 F.Supp. 46 (D.Conn.1995). `One has standing to bring his complaint into court "if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case."' Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974) (emphasis added [in State v. Property at 2018 Rainbow Drive])."
State v. Property at 2018 Rainbow Drive, 740 So.2d at 1027-28 (some emphasis original; some emphasis added). See also Battle v. Alpha Chem. & Paper Co., 770 So.2d 626, 634 (Ala.Civ.App.2000) ("While the real-party-in-interest principle directs attention to whether the plaintiff has a significant interest in the particular action he or she has instituted, standing requires that the plaintiff demonstrate an injury to a legally protected right.").
Thus, in order to determine whether the Board has standing to bring this appeal, we must determine whether the Board has a legally protected right in the matter forming the basis of the trial court's judgment. State v. Property at 2018 Rainbow Drive, supra; Battle v. Alpha Chem. & Paper Co., supra. DeVane contends that the Board acted in a quasi-judicial manner in this case, and, therefore, that the Board has no legally protected interest in the dispute that forms the basis of the circuit court's judgment and that it is precluded from appealing the circuit court's judgment reversing the Board's decision. The Board disagrees; it argues that it serves only an administrative, and not a quasi-judicial, function. The Board maintains that the Civil Service Act precludes the City from taking any part in the termination of a classified employee and, therefore, that the Board's role is to administer all aspects of the City's classified-service system; the Board maintains that for these reasons it has a statutory right and a legally protected interest in the outcome of the matter currently before this court.
The statement of legislative intent contained in the Civil Service Act indicates that the Act was intended to create a personnel system and department, and that the Board was created "for the supervision and administration of the system and [personnel] department herein created." See also City of Dothan v. Lucas, 47 Ala.App. 336, 340, 254 So.2d 341, 344 (1971) (also explaining the purposes of the Civil Service Act). The majority of the Board's duties, as set forth in the Civil Service Act, are administrative. For example, the Board's duties include, among other things, the adoption of rules or regulations to administer the act and the classified-service system; the approval, modification, revision, or rejection of recommendations made by the director of the personnel department; the investigation of charges or complaints against members of the classified-service system; and the adoption of rules and regulations designed to administer the Civil Service Act. § 8, Civil Service Act.
*887 The Civil Service Act also specifies that if an employee in the classified service is discharged by an "appointing authority,"[2] the employee may appeal that decision to the Board. § 21. Hearings before the Board are also provided to an employee in the classified-service system who is transferred or demoted. §§ 15 and 16. Thus, in addition to its administrative duties, another of the Board's functions is "[t]o conduct hearings and to render decisions ... on charges preferred against persons in the classified service." § 8(j).
In establishing the duties of the Board, the Civil Service Act sets forth a number of administrative or regulatory functions. We conclude that in addition to the Board's administrative duties with regard to its regulation of the classified-service system, the Civil Service Act sets forth distinct duties that require the Board to function as an appellate body in determining the validity of charges against employees in the classified-service system. Thus, we think it clear that in conducting hearings and appeals of complaints against persons serving in the classified-service system in its capacity as an appellate body, the Board serves a quasi-judicial, rather than an administrative, function. See Stallworth v. City of Evergreen, 680 So.2d 229 (Ala.1996) (the personnel review board for the City of Evergreen serves as a quasi-judicial body when it considers appeals by employees in the classified-service system); Walker v. Alabama Pub. Serv. Comm'n, 292 Ala. 548, 297 So.2d 370 (1974), overruled on other grounds, 520 So.2d 507 (Ala. 1987) (although many of the functions of the public service commission are legislative, it serves in a quasi-judicial capacity when it acts as a fact-finder in hearings); Ball v. Jones, 272 Ala. 305, 132 So.2d 120 (1961) (a board of zoning adjustment for a town or city performs quasi-judicial functions).
The Board in this case has asserted that it has a right to appeal in this matter because the Civil Service Act assigns to it the sole responsibility for adopting rules and regulations pertaining to employees in the City's classified-service system. However, in making that argument, the Board fails to distinguish between its administrative or regulatory functions, which would include rule-making, and its actions as a quasi-judicial body in hearing appeals such as DeVane's appeal in this case.
In Ball v. Jones, supra, certain property owners appealed a zoning ordinance enacted by the Board of City Commissioners of the City of Montgomery. Our supreme court determined that the provision allowing such an appeal was invalid because the enactment of a zoning regulation was a legislative function, as opposed to a quasi-judicial function. "Hence, the statute seeking to impose upon the circuit court a non-judicial function, a matter exclusively within the power and discretion of the legislative body of the city, cannot be conferred on the judicial branch of government." 272 Ala. at 314, 132 So.2d at 128. Another issue in that case was whether the members of the Board of Commissioners of the City of Montgomery were necessary parties to the appeal; the court concluded that the parties directly affected by the newly enacted zoning ordinance were before the court, and that the members of the Board, who had performed legislative functions, were not necessary parties. Ball v. Jones, supra.
Ball v. Jones, dealt with the legislative powers of a governmental board and decided *888 that the members of the board, while carrying out their legislative duties, were not necessary parties to an appeal related to the board's own actions. There are no Alabama cases that directly address whether an entity such as the Board, which acts in a quasi-judicial capacity, has standing to appeal or to defend a judgment reached after the circuit court's review of its decision. Therefore, we have considered the rationales from cases from other jurisdictions.
Courts in some other jurisdictions have concluded that an administrative or quasi-judicial entity that serves the public interest may obtain status as a party in order to protect the public interest. See Rommell v. Walsh, 127 Conn. 16, 15 A.2d 6 (1940) (if the subject matter of the appeal affects the general public interest, an entity such as a zoning board may be a party to an appeal involving its own decision); Public Employees Relations Comm'n v. City of Orlando, 452 So.2d 517 (Fla.1984) (holding that an agency governed by the Florida Administrative Procedure Act had standing as an appellee in a proceeding to review the agency's decision because the agency could serve to protect the public interest); Board of County Comm'rs of Johnson County v. City of Lenexa, 230 Kan. 632, 640 P.2d 1212 (1982) (holding that the board of county commissioners could be an appellee in an appeal from its decision in order to ensure the protection of the public interest); Boyd & Usher Transp. v. Southern Tank Lines, Inc., 320 S.W.2d 120 (Ky.1959) (because the Department of Motor Transportation served to protect the public interest, it was a necessary appellee in an appeal from a court order vacating the Department's decision); In re County Comm'rs of Aroostook County, 244 A.2d 75, 78 (Me.1968) (the board of county commissioners returns to the "status of administrators of the affairs of the County" when there is an appeal from a court's review of the board's action, and, therefore, the board may represent the county in that appeal).
In Board of County Commissioners of Washington County, Maryland v. H. Manny Holtz, Inc., 60 Md.App. 133, 481 A.2d 513 (1984), the Board of County Commissioners rezoned certain of Holtz's property subject to certain conditions, and Holtz appealed to the circuit court. The circuit court affirmed the rezoning, but struck the conditions the Board of County Commissioners had attached to the rezoning plan. The Board of County Commissioners appealed that judgment. The Maryland Court of Special Appeals determined that because the Board of County Commissioners was a "body politic" with broad powers to represent the county's interests, it had standing to appeal the circuit court's judgment. In so holding, however, the court distinguished the Board of County Commissioners from entities such as administrative zoning boards "whose jurisdiction and concern is carefully circumscribed." Board of County Comm'rs of Washington County, Maryland v. H. Manny Holtz, Inc., 60 Md. App. at 144, 481 A.2d at 519. In making that distinction and stating in dictum that entities with such limited or circumscribed jurisdiction would not be a necessary party to an appeal of a court's review of its own decision, the court cited with approval several cases that had concluded that entities with limited or circumscribed jurisdiction lacked standing to appeal under facts similar to those at issue in the matter currently before this court:
"As most recently enunciated by the Court of Appeals in M[arylan]d Board v. Armacost, [286 Md. 353, 354-55, 407 A.2d 1148 (1979)] the rule is this:
"`Generally, an administrative agency acting in a quasi-judicial capacity cannot *889 appeal when one of its decisions is reversed by a court of competent jurisdiction unless the authority to appeal to a higher court is provided by law....'
"As made clear in [Zoning Appeals Board v.] McKinney [, 174 Md. 551, 199 A. 540 (1938),] and subsequently in Knox v. City of Baltimore, 180 Md. 88, 23 A.2d 15 (1941), and Adler v. M. & C.C. of Baltimore, 242 Md. 329, 219 A.2d 22 (1966), the disqualification, or lack of standing, arises ultimately from the proposition that the agency is not a party to the administrative proceeding before it. That is why it has no cognizable interest in the outcome of the proceeding; that is why it is not regarded as a proper party in the circuit court, even as a respondent/appellee; and that is why it has no authority to appeal from a judgment of the circuit court that reverses or modifies its administrative decision."
Board of County Comm'rs of Washington County, Maryland v. H. Manny Holtz, Inc., 60 Md.App. at 141, 481 A.2d at 517 (emphasis added).
In this case, the Civil Service Act limits the ambit of the personnel department, and, therefore, the Board, to governing, supervising, and controlling only members of the City's classified-service system. § 4. The personnel department administers and regulates the classified-employee system, and the Board governs or supervises the administration of the personnel department. The Board does not represent the general interests of the City or the public. See Rommell v. Walsh, 127 Conn. at 23, 15 A.2d at 10 ("If the subject matter of ... an appeal does not give rise to issues affecting the public generally, the board need take no active part in the litigation but may leave it to be prosecuted by the parties directly interested."). We conclude that the Civil Service Act limits or circumscribes the functions and jurisdiction of the Board and that the Board does not represent the general public interest. Therefore, we are not persuaded that the Board, in order to protect a general public interest, is necessarily entitled to be a party to an appeal of a dispute it had itself considered and decided.
Other jurisdictions have determined that an entity such as a personnel board that acts in a quasi-judicial capacity may not be considered a party to an appeal regarding any matter in which the entity has acted in a quasi-judicial capacity. See Inhabitants of Boothbay Harbor v. Russell, 410 A.2d 554, 560 (Me.1980) ("Absent a positive legislative grant of authority to the board to defend its decisions," the board is not a proper appellee to an appeal from its own decision.); Montoya v. Department of Fin. & Admin., 98 N.M. 408, 649 P.2d 476 (N.M.Ct.App.1982) (holding that the state personnel board was not an indispensable party to a review of the board's decision because the board had acted in a quasi-judicial capacity); Nolan v. Snohomish County, 59 Wash.App. 876, 802 P.2d 792 (1990) (the city council was not an indispensable party to an appeal involving the review of the council's decision in a land-use matter); Antelope Valley Improvement & Serv. Dist. of Gillette v. State Bd. of Equalization for Wyoming, 992 P.2d 563 (Wyo.1999) (the board of equalization could not be a party to an appeal in which it had exercised its quasi-judicial functions).
In Antelope Valley Improvement & Service District of Gillette (hereinafter "Antelope Valley I"), Antelope Valley appealed to the board of equalization from the department of revenue's denial of its application for a sales-and-use tax exemption. The board dismissed the appeal as untimely, and Antelope Valley appealed to the *890 district court, which affirmed the dismissal. Antelope Valley then appealed to the Supreme Court of Wyoming, raising a number of issues. That court concluded that the board had properly found the appeal to be untimely filed. In so holding, however, the court concluded that the board did not have standing to file an appellee's brief in that court. The court stated:
"`Generally a court or board exercising judicial or quasi judicial functions, not being a party to its proceedings, and not having any legal interest in maintaining its determination, can neither appeal from a judgment or order of a court reversing the proceedings nor be heard on the appeal.' 4 C.J.S. Appeal and Error § 175 (1993)."
Antelope Valley I, 992 P.2d at 567.
In Antelope Valley I, the Wyoming Supreme Court found that the original action had been Antelope Valley's appeal of the decision of the department of revenue, and it concluded that the board was not a party to that original action. The court then determined that Antelope Valley's appeal from the board's decision was a continuation of the proceedings that had been conducted before the board. Antelope Valley I, 992 P.2d at 568. The court concluded that because the board was not a proper party to the original action, it was not a party to the appeals in the action; therefore, the court struck and refused to consider the brief the board had submitted in Antelope Valley's appeal to that court.
After the release of the opinion in Antelope Valley I, the board petitioned the Supreme Court of Wyoming for a clarification of its holding in Antelope Valley I. The court issued an opinion clarifying its original opinion by distinguishing between the effects of the board's administrative and adjudicatory functions. Antelope Valley Improvement & Serv. Dist. of Gillette v. State Bd. of Equalization for Wyoming, 4 P.3d 876 (Wyo.2000) (hereinafter "Antelope Valley II"). The court characterized the board's administrative functions as "regulatory" and its duties as an appellate body as "adjudicatory." Antelope Valley II, 4 P.3d at 878 n. 1. The court concluded that when the board acted in a regulatory capacity, it would be a proper party respondent to an appeal of its decision. However, where the board acted in an adjudicatory manner by hearing appeals or taking action that made it "resemble[] a `lower tribunal,'" the board could not inject itself as a party into the proceeding. Antelope Valley II, supra.
Similarly, in Montoya v. Department of Finance & Administration, supra, the New Mexico Court of Appeals, distinguishing between the administrative and quasi-judicial functions of a personnel board, determined that the personnel board in that case was acting in a quasi-judicial, rather than an administrative, capacity. The court held that the personnel board was not an indispensable party to an appeal to the circuit court of its own decision entered in a quasi-judicial matter. In so holding, the court rejected an argument that the personnel board was acting to protect the public interest. The court stated:
"Section 10-9-18(G), [N.M.S.A.1978 (Repl.1980)], authorizes `any party aggrieved by the decision of the board' to appeal the decision to the district court. In hearing administrative appeals by employees from agency action as distinguished from its function in adopting rules and creating policy, the State Personnel Board acts in a quasi-judicial capacity rather than a policy-making function. In the exercise of this latter role, the board is not an indispensable party."
Montoya v. Department of Fin. & Admin., 98 N.M. at 412, 649 P.2d at 480.
*891 The Civil Service Act provides a method of governing the City's hiring practices in order to promote the efficiency of the City's government and to provide job stability and security for members of the classified-service system.[3] The principal change created by the enactment of the Civil Service Act was that new procedures were established for the City's hiring and firing decisions. City of Dothan v. Lucas, supra. However, even after the enactment of the Civil Service Act,
"[t]he right to hire and fire is still reposed in the responsible officials of the City. The principal change [brought about by the enactment of the Civil Service Act] is that there has been established a new procedure for this to be done for the purpose, as stated in Heck v. Hall, 238 Ala. 274, 190 So. 280 [(1939)], of promoting better government by attracting employees who are better qualified and who are assured of tenure so long as they perform satisfactorily and do not violate the rules, which protects the employee from the political tides that ebb and flow."
City of Dothan v. Lucas, 47 Ala.App. at 341, 254 So.2d at 346 (emphasis added).
In addition to the foregoing, the record on appeal clearly indicates that, before his employment was terminated, DeVane was an employee of the City  not an employee of the Board. The City, not the Board, was the entity that terminated DeVane's employment; therefore, the City is the entity with an interest in protecting its termination decision. The Civil Service Act does not require that the Board approve the City's termination decision in order that the termination be effective. Rather, the Civil Service Act sets forth a procedure whereby a discharged classified-service employee may seek the Board's review of the termination decision. See Cheek v. Vulcan Life & Accident Ins. Co., 52 Ala.App. 192, 290 So.2d 654 (Ala.Civ. App.1973) (a classified-system act similar to Dothan's Civil Service Act did not require that the personnel board approve the termination of an employee within that system in order that that termination take effect). In hearing such an appeal, the Board acts in a quasi-judicial capacity.
DeVane and the City were clearly the only proper parties to DeVane's appeal to the Board of the City's termination of his employment; the Board could not be a party to DeVane's appeal to the Board of the City's termination of his employment. To allow the Board to become a party in an appeal of its decision to the circuit court would allow the Board to abdicate its function as an impartial quasi-judicial fact-finder in a dispute such as the one at issue in this appeal. If the Board were deemed to be a party in this matter, the Board would function as a litigant, taking an adversarial position to a party that had appeared before it in a quasi-judicial proceeding. In that situation, the Board would be advocating the position of the other party to that same quasi-judicial proceeding. There are no provisions in the Civil Service Act that allow the Board to take an adversarial role against a member of the classified-service system or to advance the position of one of the parties that has appeared before it.
After receiving evidence and hearing the arguments of the counsel for *892 the parties that appeared before it, the Board issued a decision regarding the validity of the City's termination decision. It cannot be said that the Board had any legally protected interest in the outcome of the dispute before it in the quasi-judicial proceeding, that is, in the dispute between the City and DeVane over the propriety of the City's termination of DeVane's employment. After considering DeVane's and the Board's arguments and the law from this and other jurisdictions, we conclude that the Board, after acting in its quasi-judicial capacity in hearing and deciding DeVane's appeal, could not interject itself as a party to later proceedings in this same matter; we also conclude that the Board did not have a legal interest in defending or maintaining its decision upholding DeVane's termination. The Board did not have a "cognizable interest in the outcome of [DeVane's termination] proceeding." Board of County Comm'rs of Washington County, Maryland v. H. Manny Holtz, Inc., 60 Md.App. at 141, 481 A.2d at 517. It follows, then, that the trial court's reversal of the Board's decision did not harm a legally protected right of the Board, and, therefore, that the Board has no standing in this matter. See State v. Property at 2018 Rainbow Drive, supra.
"When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction. Barshop v. Medina County Underground Water Conservation District, 925 S.W.2d 618, 626 (Tex.1996) (`Standing is a necessary component of subject matter jurisdiction'). See also Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (`"standing `is perhaps the most important of [the jurisdictional] doctrines'"'); National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.'); Romer v. Board of County Comm'rs of the County of Pueblo, supra, 956 P.2d [566] at 585 [(Colo.1998)] (`standing is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings') (Martinez, J., dissenting); Cotton v. Steele, 255 Neb. 892, 587 N.W.2d 693 (1999). But see Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh, 554 Pa. 249, 721 A.2d 43 (1998) (standing is not jurisdictional)."
State v. Property at 2018 Rainbow Drive, 740 So.2d at 1028. Similarly, when a party without standing purports to appeal to an appellate court of this state or to file a petition for a writ of certiorari the court must dismiss the appeal or the petition.
APPEAL DISMISSED.
YATES, P.J., and CRAWLEY, J., concur.
PITTMAN and MURDOCK, JJ., dissent.
PITTMAN, Judge, dissenting.
In concluding that the Dothan Personnel Board ("the Board") does not have standing to appeal the circuit court's decision, the majority holds that because the local act establishing the Board does not expressly grant the Board a right of appeal it cannot otherwise possess standing to appeal an adverse ruling of the circuit court to this court. While I agree that there is a fundamental difference between being an interested party and having standing to appeal, I conclude that the Board meets both criteria.
The real-party-in-interest principle identifies a person who has a "`significant interest *893 in the particular action.'" Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala.1988)(quoting Charles Wright and Arthur Miller, Federal Practice and Procedure § 1542 (1971)). One has standing, however, "`if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.'" Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974)(quoting Harman v. City and County of San Francisco, 7 Cal.3d 150, 159, 101 Cal.Rptr. 880, 886, 496 P.2d 1248, 1254 (1972)). I believe that once a party who appeared before the Board in its quasi-judicial capacity appeals the Board's decision to the circuit court, the Board's stake in the resolution of that proceeding gives the Board standing. I would liken it to the Board's stepping into the shoes of any municipal agency that previously appeared before the Board to respond to an employee's complaint. Thus, when an employee appeals the Board's decision to the circuit court, it seems obvious that the Board will "vigorously present" its case, that is, defend its own decision, before the circuit court. Naturally it follows that the Board has the right to appeal an adverse decision of the circuit court to this court, pursuant to § 12-3-10, Ala.Code 1975. See also Auburn Med. Ctr., Inc. v. Alabama State Health Planning & Dev. Agency, 848 So.2d 269 (Ala.Civ.App.2002) (discussing standing generally as well as standing under an agency's own rules and regulations).
This appeal is analogous to an appeal taken by a zoning board when a circuit court reverses the decision of that board. See Zoning Bd. of Adjustment of Birmingham v. Davis, 699 So.2d 1264 (Ala.Civ. App.1997); Board of Zoning Adjustment of Mobile v. Dauphin Upham Joint Venture, 688 So.2d 823 (Ala.Civ.App.1996). While I recognize that the enabling legislation for zoning and planning boards, codified at Section 11-52-1 et seq., is worded differently than the Civil Service Act, Act No. 92-442, Ala. Acts 1992, both zoning boards and personnel boards are created by legislative action and both function as quasi-judicial bodies. See Ball v. Jones, 272 Ala. 305, 132 So.2d 120 (1961); Swann v. Board of Zoning Adjustment, 459 So.2d 896 (Ala.Civ.App.1984). Therefore, the distinction the majority draws  differentiating quasi-judicial bodies from quasi-administrative bodies  appears to be a distinction without a substantive difference.
By definition, a Class 5 municipality has a population of not less than 25,000 and not more than 49,999 inhabitants according to the 1970 federal decennial census. § 11-40-12, Ala.Code 1975. By taking judicial notice that the population of the City of Dothan in 1970 was 36,733, I conclude that it is authorized to adopt the mayor/commission/city manager form of government codified at § 11-44E-1 et seq. Once Dothan adopted this form of government all applicable Code provisions apply including § 11-44E-45, which prohibits the City from participating in personnel decisions.
The Board was specifically created by legislative act to handle municipal employment matters for the municipality. Such legislation has been held "to limit political control and arbitrary discretion in public employment," Hall v. City of Tuscaloosa, 421 So.2d 1244, 1249 (Ala.1982), thereby making municipal employment and retention more reliable and stable. Our Legislature's intent to prevent the City from participating in administering personnel matters is codified at Section 11-44E-45, Ala.Code 1975. Thus, the Board acts primarily as an administrative agency handling all personnel functions for the City. While the Board does not generally represent the interests of the City, it certainly has a vested interest in seeing that its decisions regarding personnel matters are followed. Therefore, I conclude that an *894 adverse decision by a circuit court necessarily confers standing for the Board to appeal a court's decision ordering it to do or not to do something contrary to its stated position.
Furthermore, if the Board was not a proper party, then the employee's appeal to the circuit court, naming both the Board and the City, was improper,[4] as the City is prohibited by statute from taking part in the appointment or removal of civil service employees. Thus, if neither the City nor the Board has standing to bring an appeal of an adverse ruling by the circuit court, access to the appellate courts is completely denied. This is constitutionally unsound. See Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (standing exists to allow those not a party to original complaint, but affected by its outcome, to have access to the courts in order to preserve their rights).
Based on the above reasoning, and because I would address the merits of the appeal, I respectfully dissent.
NOTES
[1] A Class 5 municipality is one that, at the time of the 1970 decennial census, had a population of not less than 25,000 and not more than 49,999. § 11-40-12(a), Ala.Code 1975.
[2] Under the Civil Service Act, an "appointing authority" is defined as "a department head." § 2.
[3] See Hurley v. Marshall County Commission, 614 So.2d 427, 432 (Ala. 1993) (noting that the purpose of civil-service laws is to promote the efficiency of local governments by providing their employees "stability, continuity, and security in their jobs"); Hall v. City of Tuscaloosa, 421 So.2d 1244, 1249 (Ala. 1982) (the purpose of civil-service legislation is "to achieve the goals of stability, continuity, and security in the various job classifications within a municipality").
[4] Section 33 of the Civil Service Act provides a method for "[a]ny person or city official directly interested" to appeal a decision of the Board to the circuit court. It neither expressly authorizes nor prohibits the Board from appealing an adverse ruling of the circuit court.